IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 11-289-1 |
| | : | |
| CALVIN HICKS | : | |

# MEMORANDUM

**Juan R. Sánchez, J.**                                                                  **October 27, 2011**

Sometime after 4:30 a.m. on December 27, 2008, Philadelphia Police Officer David Brown stopped a Range Rover in which Defendant Calvin Hicks was a passenger in connection with an ongoing investigation of an armed robbery of a business/residence on the same block only 15 to 30 minutes earlier. Hicks contends the stop was illegal and asks this Court to suppress all evidence derived from the stop, including evidence seized pursuant to search warrants issued for the Range Rover and for his girlfriend's residence, as well as his statement at the time of the stop.[1] Because this Court finds the stop was supported by reasonable suspicion, Hicks's motion is denied.

**FINDINGS OF FACT**[2]

1.        Around 4:30 a.m. on December 27, 2008, while sleeping on a couch on the second floor of his home at 2420 Rhawn Street in Philadelphia, Anthony Sabatino was awakened by the sound of glass breaking. Sabatino was 14 years old at the time.

2.        Thinking someone was breaking in, Sabatino went outside and walked west on Rhawn Street

---

[1] Hicks also asks this Court to suppress his out-of-court identification by Kitty Tam, one of the victims of the robbery, and any in-court identification by Mrs. Tam; however, this request is moot, as the Government has represented it does not intend to present any identification testimony from Mrs. Tam at trial.

[2] The following facts are based on the testimony of witness Anthony Sabatino and Officer Brown at the October 24, 2011, hearing on Hicks's motion to suppress.

toward the corner of Rhawn and Leonard Streets, passing by Sunny's Grill & Beer (Sunny's), a business located at 2416 Rhawn Street with a residence above it. Both Sabatino's home and Sunny's were located on the south side of Rhawn Street, in the block between Leonard Street and Roosevelt Boulevard.

3. When he reached the corner, Sabatino saw people running south on Leonard Street. By the time Sabatino caught sight of these individuals, they were past the entrance to an alleyway that runs behind Sunny's. Sabatino watched the individuals run down the block to the next corner where they got into a vehicle which Sabatino described as a truck.

4. While Sabatino was at the corner of Rhawn and Leonard, he saw a gray Range Rover with "big rims" approach the intersection from the west and turn south onto Leonard Street, honking the horn. Sabatino could not identify the vehicle's two occupants because they covered their faces as they drove by; however, he believed the Range Rover was the same vehicle which the individuals he had seen running down Leonard Street only moments earlier had entered.

5. Sabatino then returned to his house where, from the back door, he saw two people at Sunny's, one on the roof of the building and the other climbing down a ladder from the roof. Sabatino yelled out "what are you doing" or words to that effect as the two individuals ran in a southeast direction away from Sunny's toward the alley and then south down the alley parallel to Roosevelt Boulevard. Sabatino lost sight of the individuals when they turned south down the alley.

6. When the police arrived approximately five to ten minutes later,[3] Sabatino spoke with them outside of his house and gave them a summary of what he had witnessed, including a description of

---

[3] Sabatino did not personally call the police.

2

the Range Rover. Sabatino remained outside with the police until Hicks was arrested.[4]

7.      While on duty in the early morning on December 27, 2008, Officer Brown responded to a radio call regarding a home invasion robbery at Rhawn Street and Roosevelt Boulevard (the Sunny's robbery). The radio call included a description of a Range Rover with oversized chrome wheels which had been involved in the robbery.[5] Officer Brown did not recall whether the description included the color of the Range Rover.

8.      Upon his arrival at the scene, Officer Brown proceeded to survey the area, but he did not see the Range Rover. He then returned to the intersection of Rhawn Street and Roosevelt Boulevard where he assisted in wrapping up the investigation. While parked in a parking lot on the north side of Rhawn Street just west of Roosevelt Boulevard, Officer Brown saw a vehicle fitting the description of the Range Rover with oversized chrome wheels facing east on Rhawn Street. The

---

[4] While Sabatino was outside, the police asked him to identify two suspects they had picked up, which he did.

[5] Hicks disputes that the radio description included any mention of the Range Rover's rims, citing Sabatino's failure to mention the rims in his earlier grand jury testimony in this case as well as the lack of any documentation regarding the description. It is not clear why Sabatino did not mention the Range Rover's rims in his grand jury testimony; at the suppression hearing, he unequivocally identified the vehicle he saw as a Range Rover with "big rims." Although Sabatino was not certain whether he mentioned the rims to the police, Officer Brown specifically recalled the description he heard over the radio stated the vehicle involved in the robbery was a Range Rover with oversized chrome wheels. Indeed, when questioned by defense counsel as to how he could recall this description nearly three years later, Officer Brown stated it was precisely because the description was so distinctive that he could remember it, noting he does not see a lot of Range Rovers, and also noting it is unusual to see big chrome wheels on a Range Rover. This Court finds Officer Brown's testimony credible on this issue. Moreover, the lack of documentation regarding the radio description of the vehicle involved in the robbery does not undermine Officer Brown's credibility. Officer Brown explained he would not have made a written note regarding the vehicle he was looking for upon receiving the radio call because he was driving at the time, and explained the mobile data terminal on which the description would have appeared in his car does not create a written record.

Range Rover was stopped behind two other cars at the traffic light at the corner of Rhawn and Roosevelt.

9. Sabatino also noticed the Range Rover from where he was standing in the parking lot in front of his house and Sunny's, and told the police it was the vehicle he had seen driving down Leonard Street blowing its horn, although there is no evidence Sabatino spoke with Officer Brown. Sabatino estimated he pointed the vehicle out to the police about 15 to 20 minutes after he had seen it on Leonard Street, though he acknowledged it could have been as much as 30 minutes later.

10. Officer Brown pulled behind the Range Rover and activated his lights. After the driver pulled over, Officer Brown approached the passenger side of the vehicle, while his backup officer approached the driver's side. The Range Rover had three occupants: a woman in the driver's seat, Hicks in the passenger seat, and a young child in the back seat.

11. Officer Brown spoke with Hicks at the passenger side window, asking Hicks where he was going and why. Hicks explained he was going to a Walgreens at the intersection of Frankford and Bridge to get medicine for the baby in the back seat, who was sick. Hicks also stated he lived at Woodhaven Road and Roosevelt Boulevard, prompting Officer Brown to ask Hicks why he had not simply driven down Roosevelt Boulevard instead of driving east on Rhawn Street, and why he had not gone to one of several pharmacies closer to his home. Officer Brown testified Hicks did not have a satisfactory explanation.

12. While the Range Rover was pulled over, one of the victims of the robbery looked through the back window and identified "blunts" taken from Sunny's in the back of the vehicle.

13. After the victim identified these items, Hicks was taken out of the Range Rover, handcuffed, searched, and placed in a police car.

4

**DISCUSSION**

Hicks's suppression motion challenges the legality of Officer Brown's initial stop of the Range Rover and seeks exclusion of all evidence derived from this allegedly unlawful stop. The parties agree that, as a passenger in the Range Rover at the time Officer Brown stopped it, Hicks has standing to challenge the constitutionality of the stop. *Brendlin v. California*, 551 U.S. 249, 251 (2007); *United States v. Mosley*, 454 F.3d 249, 253 (3d Cir. 2006).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008) (citation omitted). Under the exception to the warrant requirement established in *Terry v. Ohio*, 392 U.S. 1 (1968), however, a police officer "may conduct an investigatory stop of a moving vehicle if he has reasonable suspicion that its passengers are engaged in criminal activity." *United States v. Mathurin*, 561 F.3d 170, 174 (3d Cir. 2009).

To satisfy the reasonable suspicion standard, the detaining officer must have "a particularized and objective basis for suspecting the person stopped of criminal activity." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (internal quotation marks and citation omitted)). In evaluating whether reasonable suspicion existed, a court must consider "'the totality of the circumstances' from the viewpoint of law enforcement officers" at the time the seizure was effected. *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Where an investigatory stop "is made primarily upon the basis of information supplied to the police by an informant, a central issue is whether the informant's information is sufficiently reliable and complete to provide the police

5

with 'reasonable suspicion' in stopping the designated persons or vehicles for investigation." *United States v. Goodrich*, 450 F.3d 552, 559 (3d Cir. 2006).

Here, the description of the Range Rover and its involvement in the Sunny's robbery was provided by Sabatino, who, after waking to the sound of breaking glass, personally observed individuals running down Leonard Street away from the scene of the crime. Sabatino saw the individuals get into a vehicle at the end of the block, and then saw what he believed was the same vehicle approach the intersection of Rhawn and Leonard and turn south onto Leonard, honking its horn. Sabatino testified the vehicle was driving slowly, about 20 miles per hour, and observed it was a gray Range Rover with big rims. After returning home, Sabatino watched from the back door of his residence as two individuals climbed down a ladder from the roof of Sunny's to the ground, and ran down a back alley away from the location of the robbery.

When the police arrived on the scene five to ten minutes later, Sabatino told them what he had seen in person, and the officers thus had the opportunity to evaluate his demeanor and credibility. Sabatino then stayed outside with the police while they conducted their investigation. Although Sabatino did not communicate directly with Officer Brown, the information Sabatino provided to the police formed the basis for the radio call to which Brown responded; therefore, the knowledge of the officers to whom Sabatino spoke is imputed to Brown in determining the reasonableness of the stop. *See Torres*, 534 F.3d at 210 ("[T]he knowledge of the [police] dispatcher is imputed to the officers in the field when determining the reasonableness of the *Terry* stop."). In these circumstances, Sabatino's tip was sufficiently reliable to support reasonable suspicion.

Hicks argues the stop was nevertheless unlawful because the description was not sufficiently particularized and because the stop occurred too long after the robbery to support a reasonable

6

inference that the Range Rover Officer Brown stopped was the same Range Rover Sabatino saw. This Court disagrees. While the description on which Officer Brown relied may not have included every available detail about the vehicle in which the suspects fled the scene, the description included certain distinctive features of the vehicle, and, viewed in light of the totality of the circumstances, it was sufficient to provide an objective and particularized basis for the stop.

First, the description identified the vehicle as a Range Rover, a car Officer Brown testified he rarely sees. Second, the description included the fact the vehicle had oversized chrome wheels, a feature Officer Brown stated was unusual to see on a Range Rover. Third, Officer Brown stopped the Range Rover on the same block where the robbery occurred, only 15 to 30 minutes after the crime was committed. *See Goodrich*, 450 F.3d at 562 (noting a stop's geographical and temporal proximity to the scene of an alleged crime may support a finding of reasonable suspicion).[6] Finally, the stop occurred in the early morning hours, sometime between 4:45 and 5:00 a.m., a time of day that supports an inference of criminal activity. *See id.* at 561 (noting the time of day may support a finding of reasonable suspicion); *United States v. Parker*, No. 09-806, 2010 WL 4456919, at *5 (E.D. Pa. Nov. 5, 2010) (holding the fact an investigatory stop occurred around 4:00 a.m. supported an inference of criminal activity).

Given the totality of these circumstances, this Court finds Officer Brown had reasonable suspicion to stop the Range Rover. *See Goodrich*, 450 F.3d at 560-63 (upholding an investigatory

---

[6] Although Hicks argues the timing of the stop weighs against a finding of reasonable suspicion because the stop may have followed the robbery by as much as a half hour, courts have found similar time frames supportive of reasonable suspicion. *See United States v. Abdus-Price*, 518 F.3d 926, 930 (D.C. Cir. 2008) (citing the fact a stop was conducted less than 40 minutes after a robbery as a factor supporting reasonable suspicion); *United States v. Foxwell*, No. 04-241, 2004 WL 1858341, at *1-2 (E.D. Pa. Aug. 4, 2004) (rejecting the argument that a stop 30 minutes after a robbery was unconstitutional because it occurred too long after the crime).

stop based on a tip reporting a possible theft in progress at a farm supply company, notwithstanding the lack of any specific description of either the suspects or the getaway vehicle, where the stop occurred late at night in the immediate vicinity of the company and within seven minutes of the report, and where there were no other vehicles in the area at the time of the stop); *see also Abdus-Price*, 518 F.3d at 930-31 (holding officers had reasonable suspicion to stop a Ford Crown Victoria based on its similarity to a car in which robbery suspects were reported to be driving, where the stop occurred less than 40 minutes after the robbery within a few blocks of the crime scene); *United States v. Wimbush*, 337 F.3d 947, 949-51 (7th Cir. 2003) (upholding a stop of a vehicle matching the description of a vehicle a shooting suspect was reported to be driving—a purple SUV with shiny rims—where the stop occurred only 15 minutes after the shooting and only eight blocks away); *Foxwell*, 2004 WL 1858341, at *1-2 (holding a police radio call reporting a gunpoint robbery by three black males dressed in black clothing who took the complainant's baby-blue Avirex jacket and wallet supplied reasonable suspicion for a police officer to stop a black man in black clothing carrying a baby-blue jacket 30 minutes later six blocks from the scene of the robbery).

At the suppression hearing, Hicks raised the additional argument that any statements he made during the stop must be suppressed for the independent reason that such statements were obtained in violation of his *Miranda* rights.[7] This argument lacks merit, as there is no basis on which to conclude Hicks was "in custody" for purposes of *Miranda* when Officer Brown was talking to him at the passenger side window. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (holding a person temporarily detained pursuant to a traffic stop or a *Terry* stop "[is] not 'in custody' for the purposes of Miranda" unless, following the stop, the person "is subjected to treatment that renders

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

8

him 'in custody' for practical purposes"); *United States v. Anderson*, 859 F.2d 1171, 1177 (3d Cir. 1988) ("[T]he roadside questioning of a motorist detained pursuant to a routine traffic stop is not custodial in nature and a *Miranda* warning is not required."). Although Hicks points to Officer Brown's testimony at the suppression hearing that Hicks was not free to leave when he was stopped, there is no evidence Brown communicated this to Hicks, and "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time." *Berkemer*, 468 U.S. at 442.

**CONCLUSIONS OF LAW**

1. Officer Brown possessed a reasonable suspicion the occupants of the Range Rover he stopped in the early morning hours on December 27, 2008, had been involved in the robbery of Sunny's Grill & Beer, which had occurred a short time earlier.

2. The stop of the Range Rover in which Hicks was a passenger on December 27, 2008, did not violate the Fourth Amendment of the United States Constitution; therefore, evidence derived from the stop will not be suppressed.

3. Hicks's statements during the investigatory stop were not obtained in violation of his *Miranda* rights.

                                                BY THE COURT:

                                                /s/ Juan R. Sánchez
                                                Juan R. Sánchez, J.